# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LIFETOUCH NATIONAL SCHOOL STUDIOS, INC.,** | ) ) ) | Case No. 3:15-cv-234 |
| Plaintiff, | ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) | |
| **ELIZABETH ROLES,** | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

In this breach-of-contract case, Defendant Elizabeth Roles ("Roles") has moved to compel discovery from Plaintiff Lifetouch National School Studios, Inc. ("Lifetouch"), under Federal Rule of Civil Procedure 37. (ECF No. 42.) Roles also requests that Lifetouch be ordered to pay the attorneys' fees she incurred in connection with her Motion. (*Id.*) For the reasons below, Roles's Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. Factual & Procedural Background

### A. This Case

This case arises out of Roles's employment with Lifetouch. Lifetouch is a photography company for which Roles worked as a Territory Manager in and around Cambria County, Pennsylvania, from July 21, 1998, until July 29, 2014. (ECF Nos. 1 ¶¶ 10-11, 25; 41 ¶¶ 10-11, 25.) Lifetouch alleges that it fired Roles after an internal investigation revealed that she had been engaging in conduct that violated her employment agreement. (ECF No. 1 ¶ 25.) Lifetouch contends, among other things, that Roles had been performing work under Lifetouch's name

but submitting the resulting photography-production jobs to a third-party production lab rather than a Lifetouch production lab, and that Roles would then pocket the proceeds. (*Id.* ¶ 26-27.)

In addition to firing Roles, Lifetouch also initiated legal action against her. Lifetouch filed a complaint against Roles in this Court at civil action number 3:14-cv-00182. That case is stayed pending the disposition of a related criminal case, which is being prosecuted by the Cambria County District Attorney's Office. (*See* 3:14-cv-00182, ECF No. 22.) After that civil case was stayed, Lifetouch filed this case against Roles because Lifetouch had allegedly learned that Roles had committed new violations of her employment agreement. (ECF No. 1 ¶ 30.) Specifically, Lifetouch states in this case that Roles accepted a sales position with a Lifetouch competitor, Strawbridge Studios, Inc. ("Strawbridge"), and that she solicited Lifetouch employees and customers. (*Id.* ¶¶ 30-33, 35-45.) Lifetouch contends that these actions violate the nonsolicitation and noncompete provisions of Roles's employment agreement with Lifetouch. (*Id.* ¶¶ 56-66.) Roles filed an Answer and Counterclaim, denying that she violated the nonsolicitation and noncompete provisions of her employment agreement and bringing a counterclaim against Lifetouch for abuse of process. (ECF No. 23.)

B.  **Roles's Motion for Leave to Amend Her Counterclaim**

On September 28, 2016, Roles requested leave to amend her counterclaim. (ECF No. 36.) At the heart of Roles's request for leave to amend were two versions of an email chain disclosed during discovery. The first version, Roles explained in her motion for leave, was produced by the Northern Cambria School District. (*Id.* ¶ 12.) The underlying email was sent by Joseph Kimmel, Superintendent of the Northern Cambria School District, to Nicole Williams, a Lifetouch employee. (ECF No. 36-1.) Kimmel was responding to a request by Williams for

information regarding the company that would be doing photography work for Northern Cambria School District during the 2015 school year and the length of any contract with that photography company. (*Id.*) In the first version of the email, Kimmel replies "Strawbridge[,] No contract." (*Id.*)

The second version of the email chain was produced by Strawbridge. (*See* ECF No. 36 ¶ 10.) That version shows that Kimmel's email was forwarded by another Lifetouch employee, Joseph Segall, to the President of Strawbridge, Kenneth Strawbridge. (ECF No. 36-2.) However, in the second version, Kimmel writes "Strawbridge[,] No contract. Beth Roles." (*Id.*) Thus, the name "Beth Roles" suddenly appears in what is purportedly the same email. In Roles's request for leave to amend, she explained that both Williams and Kimmel have attested under oath that they did not include "Beth Roles" in the email. (ECF No. 36 ¶¶ 15-16.) Roles argued that the conflicting email versions suggested that someone at Lifetouch had altered the email to interfere with Roles's employment relationship with Strawbridge, and that this revelation justified leave to amend her counterclaim.

The Court granted as unopposed Roles's motion for leave to amend. (ECF No. 39.) Roles filed her Answer and Amended Counterclaim on October 31, 2016, adding claims of tortious interference with contractual relations and defamation per se.[1] (*See* ECF No. 41.)

---

[1] The proposed Answer and Amended Counterclaim which Roles attached to her request for leave to amend (ECF No. 36-3) differs from her Answer and Counterclaim as filed (ECF No. 41); the as-filed version added the defamation per se claim. Although it is doubtful that this difference would have changed the Court's ruling, Roles's counsel should in the future inform the Court if he intends to file something different than was represented to the Court.

### C. Roles's Motion to Compel

On November 10, 2016, Roles moved to compel discovery from Lifetouch pursuant to Federal Rule of Civil Procedure 37. (ECF No. 42.) Roles also requests that this Court order Lifetouch to pay the attorneys' fees she incurred in connection with her Motion to Compel. (*Id.*) The bases for Roles's Motion to Compel are discovery requests related to the conflicting email versions discussed above.

## II. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." A matter is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." *See* Fed. R. Evid. 401. In determining whether discovery is proportional to the needs of the case, courts must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Furthermore, "[i]nformation within [the] scope of discovery need not be admissible in evidence to be discoverable." *Id.* But although the right to discovery under the Federal Rules is broad, "this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999) (citation omitted).

Rule 37 provides the mechanism to compel discovery from a person or party who refuses to provide discovery. The party moving to compel discovery under Rule 37 bears the

initial burden of proving the relevance of the material requested. *See Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001) (citations omitted). If the movant meets this initial burden, the burden then shifts to the party resisting discovery to establish that discovery of the material requested is inappropriate. *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996) (citation omitted). The party resisting discovery must explain with specificity why discovery is inappropriate; the boilerplate litany that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient. *See Josephs v. Harris Corp.*, 677 F.2d 985, 991 (3d Cir. 1982)

If the party resisting discovery claims the right to do so on the basis of privilege, that party has the burden of proving that a privilege applies. *See Conoco, Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982). Relevant here are the attorney-client privilege and the attorney work-product privilege.[2] The attorney-client privilege "protects from disclosure confidential communications made between attorneys and clients for the purpose of obtaining or providing legal assistance to the client." *In re Grand Jury Subpoena*, 745 F.3d 681, 687 (3d Cir. 2014) (citation omitted). The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Closely related to the attorney-client privilege is the work-product

---

[2] There is a question regarding what law governs the contours of these privileges. *See* Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *see also* Fed. R. Evid. 1101(c) ("The rules on privilege apply to all stages of a case or proceeding."). The Employment Agreement underlying this dispute contains a choice-of-law provision which provides that the Agreement "shall be construed and governed by the laws of the State of Minnesota." (ECF No. 1-2 at 7.) It is unclear whether this provision applies to claims of privilege, but the Court finds that it does not need to reach this issue at this time.

doctrine, which "is designed to protect material prepared by an attorney acting for his client in anticipation of litigation." *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990) (citation omitted).

**III.   Analysis**

Although Roles provides a detailed chronology of the events leading up to her Motion to Compel, she is less clear on exactly what discovery she seeks, or on which discovery requests her Motion is based. (*See* ECF No. 42 at 8 ("Defendant respectfully requests that Plaintiff be compelled to produce the information and documents sought by Defendant, as set forth above . . . ."), 9 ("Defendant respectfully requests that Plaintiff be compelled to provide full and complete responses to Defendant's discovery requests, as set forth above . . . .").) Roles is more perspicuous in her Reply:[3]

> Defendant requests that Plaintiff be ordered to produce (1) copies of August 25, 2015 email in native format from all individuals within Plaintiff's organization to whom it was forwarded and/or sent; (2) Mr. Segall for deposition at a mutually convenient time and location; and (3) copies of any email authored by Charles Lantz the production of which Plaintiff has objected based on the attorney work product doctrine

(ECF No. 45 at 4.)

Thus, the first question is whether Roles has met the initial burden of showing that these materials are relevant. *See Morrison*, 203 F.R.D. at 196 (citations omitted). The Court—with qualifications—holds that Roles has met that burden.

---

[3] However, Roles's counsel filed this Reply without leave of Court, which is required under Section II.B. of this Court's Practices and Procedures. Going forward, the Court will not entertain filings by Roles's counsel that violate this Court's rules.

### A. Copies of the August 25, 2015 Email in Native Format From All Individuals Within Lifetouch's Organization to Whom It Was Forwarded And/Or Sent

Request number 3 of Roles's Second Requests for the Production of Documents requested "[c]opies, inclusive of all metadata, of all documents evidencing the circulation of the email from Joseph Kimmel to Nichole [sic] Williams, dated August 25, 2015, within Plaintiff's computer network." (ECF No. 42-3 at 4.) Based on Roles's counterclaims, this information falls within the scope of relevant material. Roles's counterclaims are premised on the allegation that Lifetouch intentionally altered the August 25, 2015 email. Documents illustrating how that email was circulated within Lifetouch relate to whether Lifetouch did in fact alter the August 25, 2015 email, and—if so—how that alteration occurred. Thus, these documents are relevant because they have "any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 501.

The next question is whether Lifetouch has established that discovery of documents illustrating how the August 25, 2015 email was circulated within Lifetouch is inappropriate. *See Momah*, 164 F.R.D. at 417 (citation omitted). In Plaintiff's Answers and Responses, Lifetouch objected to this request by stating that

> Plaintiff has already produced a copy of the subject email and does not otherwise have any documents or information that are responsive to this request. Moreover, the circulation of said email is protected under the Attorney-Client Privilege and/or the Work Product Doctrine, as it was circulated amongst counsel. For purpose of providing Defendant with additional information, the email had been circulated amongst Charles Lantz, Jim West, and counsel.

(ECF No. 45 at 4.) However, in Plaintiff's Response to Defendant's Motion to Compel (ECF No. 44), Lifetouch appears to have abandoned its privilege arguments; at no point does Lifetouch

argue that discovery of these documents is inappropriate based on privilege. Instead, Lifetouch appears to argue that it has already produced enough information regarding the emails. Lifetouch states that Roles "already has a copy of the email from Segall to Strawbridge," and Lifetouch goes on to explain that it has produced PDF versions of the email and the native form of the email as forwarded from Segall to Strawbridge. Further, Lifetouch argues that "a copy of that email in native form is not only unreasonable, but not likely to lead to the discovery of admissible information based on those emails that have already been produced."[4] (ECF No. 44 at 3.)

These arguments are insufficient to avoid discovery. As an initial matter, the fact that Roles already has a copy of the August 25, 2015 email has no bearing on whether Lifetouch altered the email. The relevance of the documents Roles seeks is derived from their circulation within Lifetouch; a complete picture of how the email was received, discussed, and ultimately sent—or even discussed after it was sent—would be relevant to Roles's claims. Thus, the fact that Roles already has a copy of the email is irrelevant. And Lifetouch's argument that it should not have to produce these documents because it already produced a copy of the email from Segall to Strawbridge is unpersuasive for the same reasons.

This leaves Lifetouch's argument that production in native format is unreasonable. But Lifetouch does not explain what about native production would be unreasonable. Furthermore, Lifetouch specifically agreed "to produce . . . electronic documents in native format" in the parties' Rule 26(f) Report. (ECF No. 18 at 4.) Without additional explanation why native

---

[4] This last response is puzzling. If Lifetouch has already produced the email in native format, then there should be no dispute as to its production. And it certainly seems contradictory to argue that native production is "unreasonable" if Lifetouch has already produced the email in native format.

production of the requested documents would be unreasonable, Lifetouch cannot now avoid discovery of native documents. Thus, Lifetouch will produce all copies—in native format—of the August 25, 2015 email between Mr. Kimmel and Ms. Williams circulated within Lifetouch or any of its agents.[5]

### B. Producing Mr. Segall for Deposition at a Mutually Convenient Time and Location

In Roles's Reply, she states that the second type of relief she seeks is a court order compelling Lifetouch to produce John Segall for a deposition at a mutually convenient time and location. (ECF No. 45 at 4.) The problem with this request is that Roles has not identified a specific discovery request or deposition notice regarding Segall to which Lifetouch has refused to respond. In Roles's initial Motion she states that Lifetouch has "steadfastly refused to provide any explanation or documents setting forth Mr. Segall's relationship with Lifetouch (see objection to Request for Production No. 6)." (ECF No. 42 at 4-5). Roles further explains that Lifetouch "has refused to produce [Segall] for deposition, [and that Lifetouch has stated] that he 'has no information even remotely relevant to the facts of this matter.'" (*Id.* at 5.)

Request number 6 of Roles's Second Requests for the Production of Documents requested "[a]ny and all documents reflecting, memorializing or otherwise setting forth the nature of the relationship between Plaintiff and John Segall as of September 2015." In their response to this request, Lifetouch objected that this information was not likely to lead to the discovery of admissible information. (ECF No 42-3 at 2-3). As explained above, however, the crux of Roles's counterclaims is that Lifetouch altered the August 25, 2015 email. That email

---

[5] Because Lifetouch does not address its earlier claims of privilege in its Response to Defendant's Motion to Compel, and because the Court is without sufficient information to make a determination as to whether any privilege applies, the Court does not reach the issue of privilege.

was sent by John Segall. Thus, the nature of Segall's relationship with Lifetouch—whether he was an employee, independent contractor, or a senior official within the organization—bears directly on Lifetouch's potential liability. The Court therefore holds that documents setting forth the nature of the relationship between Lifetouch and John Segall as of September 2015 are relevant and therefore discoverable. To the extent Lifetouch has not yet disclosed these documents, Lifetouch is ordered to produce them.

As for Roles's request for an order compelling Lifetouch to produce Segall for a deposition, that request is denied. Roles has not established that Lifetouch has refused a discovery request for Segall's deposition, or that Lifetouch's permission is even needed to depose Segall. Roles was free to schedule Segall's deposition without Lifetouch's—or the Court's—permission.[6] *See* Fed. R. Civ. P. 30(a)(1). And if Segall had refused to attend his deposition, Roles could have compelled his attendance by subpoena under Rule 45. But Roles has not established that it is Lifetouch's responsibility to produce Segall, and the Court will therefore not issue an order compelling Lifetouch to produce Segall.

### C.  Copies of Any Email Authored by Charles Lantz the Production of Which Lifetouch Has Objected To Based on the Attorney Work-Product Doctrine

The third and final type of relief Roles seeks in her Reply is an order compelling Lifetouch to produce any email authored by Charles Lantz to which Lifetouch has objected based on the attorney work-product doctrine. (*See* ECF No. 45 at 4.) Similar to her request for an order compelling the production of Segall, however, Roles has not identified a specific

---

[6] Roles may have been unable to schedule Segall's deposition because she lacked his contact information due to Lifetouch's refusal to provide this information. But that fact would not justify an order compelling Lifetouch to produce Segall; it would justify an order compelling Lifetouch to provide contact information for Segall.

discovery request that seeks emails authored by Charles Lantz. To the extent Roles seeks clarification that Lifetouch's claim of privilege with respect to emails written by Charles Lantz is inappropriate, the Court holds that Lifetouch has failed to meet its burden of proving that a privilege applies here. *See Conoco*, 687 F.2d at 730. Lifetouch's Response to Roles's Motion to Compel does not address any claim of privilege, and Lifetouch therefore cannot avoid discovery of documents authored by Charles Lantz on the basis of privilege. Thus, to the extent Lifetouch has withheld, on the basis of privilege, materials authored by Charles Lantz which are responsive to Roles's discovery requests, Lifetouch will produce those documents.

### D. Attorneys' Fees

Roles also requests that Lifetouch be ordered to pay the attorneys' fees she incurred in connection with bringing her Motion to Compel. Rule 37(a)(5)(A) provides that if a motion to compel is granted, or the requested discovery is provided after the motion's filing, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Rule 37(a)(5)(A) further provides some exceptions to this mandate. The Court must not order this payment if "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A).

Here, Lifetouch argues that its nondisclosure was substantially justified because it was continuously supplementing its discovery responses. (ECF No. 44 at 4-5.) And Lifetouch

-11-

argues that attorneys' fees are inappropriate because Lifetouch was only two days late with its discovery responses and has now produced all information requested. (*Id.*) But these arguments do not stand up to scrutiny. Although Lifetouch claims it has produced all documents requested, it simultaneously argues that production of the August 25, 2015 email in native format is unreasonable. (*Id.* at 44.) Ergo, Lifetouch implicitly concedes that it has *not* produced all documents requested.

A party is substantially justified in failing to disclose required discovery when a reasonable person would be satisfied that the parties could differ as to whether the party was required to comply with the discovery request. *Tolerico v. Home Depot*, 205 F.R.D. 169, 175 (M.D. Pa. 2002) (citation and internal quotation marks omitted). "The test of substantial justification is satisfied if there exists a genuine dispute concerning compliance." *Id.* at 175-176 (citation and internal quotation marks omitted); *see also Grider v. Keystone Health Plan Cent.*, 580 F.3d 119, 140 n.23 (3d Cir. 2009) (noting *Tolerico*'s definition of "substantial justification").

Principally as to Roles's request for all native documents illustrating the circulation of the August 25, 2015 email within Lifetouch, the Court finds there is not a genuine dispute concerning compliance. These documents were clearly relevant and discoverable; they are at the heart of Roles's counterclaims. As explained above, Lifetouch's objections to the contrary are unpersuasive. The Court therefore holds that Lifetouch did not have a substantial justification in withholding those documents. Nor has Lifetouch established that other circumstances make an award of expenses unjust under Rule 37(a)(5)(A)(iii) as it relates to these documents. Thus, attorneys' fees for this portion of Roles's Motion to Compel are proper.

However, because the Court grants Roles's Motion to Compel only in part, the propriety of attorneys' fees as it relates to the remainder of Roles's Motion is less clear. Roles has not established that Lifetouch refused a discovery request for Segall's deposition, nor has Roles identified a specific discovery request that seeks emails authored by Charles Lantz. Furthermore, Roles filed a Reply brief in this case without leave of Court. As such, the Court finds that—at least as to part of Roles's Motion—"other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(iii). The Court will therefore award only partial attorneys' fees.

## IV. Conclusion

For the foregoing reasons, Roles's Motion to Compel (ECF No. 42) is **GRANTED IN PART** and **DENIED IN PART**. A corresponding Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LIFETOUCH NATIONAL SCHOOL STUDIOS, INC., | ) ) ) | Case No. 3:15-cv-234 |
| Plaintiff, | ) ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) ) | |
| ELIZABETH ROLES, | ) ) ) | |
| Defendant. | ) | |

## ORDER

**NOW**, this 15th day of December 2016, upon consideration of Defendant Elizabeth Roles's ("Roles") Motion to Compel (ECF No. 42) and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is **HEREBY ORDERED** as follows:

1. Roles's request for an order compelling Plaintiff Lifetouch National School Studios, Inc. ("Lifetouch"), to produce copies of the August 25, 2015 email from all individuals within Lifetouch to whom the email was forwarded and/or sent is **GRANTED**.
   Lifetouch will produce all documents regarding the circulation of the August 25, 2015 email from Joseph Kimmel to Nicole Williams within Lifetouch's computer network. Lifetouch will produce these documents, when applicable, in native format pursuant to the parties' agreement as stated in their Rule 26(f) Report.

2. Roles's request for an order compelling Lifetouch to produce Joseph Segall for deposition at a mutually convenient time and location is **DENIED**. However, documents setting forth the nature of the relationship between Lifetouch and John Segall as of September 2015 are relevant and therefore discoverable. If Lifetouch has not yet disclosed these documents, Lifetouch will produce them.

3. Roles's request for an order compelling Lifetouch to produce copies of any email authored by Charles Lantz, to which Lifetouch has objected based on privilege, is **DENIED** because Roles has not identified a specific document request that seeks emails authored by Charles Lantz. However, Lifetouch has failed to meet its burden of proving that a privilege applies to emails authored by Charles Lantz. Lifetouch therefore cannot avoid discovery of emails authored by Charles Lantz on the basis of privilege.

   Thus, to the extent Lifetouch has withheld, on the basis of privilege, materials authored by Charles Lantz which are responsive to other discovery requests by Roles, Lifetouch will produce those materials.

4. Lifetouch will abide by the scope of discovery of Federal Rule of Civil Procedure 26(b)(1), as elaborated in the Memorandum Opinion accompanying this Order.

5. Roles's request for attorneys' fees is **GRANTED IN PART**. Roles shall submit an affidavit **on or before January 6, 2017**, detailing the attorneys' fees she incurred in bringing her Motion to Compel (ECF No. 42) only.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE